UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANGELA MICHELLE SCOTT** | **CIVIL ACTION NO. 09-872** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **TURNER INDUSTRIES GROUP, LLC, ET AL.** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants Turner Industries

Group, LLC, Turner Industries Holding Company, LLC and Turner Industries, LLC (collectively

herein "Turner" or "Defendants"). For the reasons expressed herein below, the court finds that

the motion for summary judgment should be GRANTED in full.[1]

## I.    BACKGROUND

Plaintiff, Angela Michelle Scott, is a former Turner employee. Plaintiff began working

for Turner in 1998 as an Executive Secretary in the Maintenance and Turnaround Division.[2]

Eventually, Ronnie Breaux ("Breaux") became her direct supervisor, although she was required

---

[1] The court notes that Turner's successive motion to strike is considered in a separate memorandum ruling and order also issued this day. All evidence ordered stricken from the record in that ruling and order is not considered by this court in conjunction with the instant motion.

[2] R. 54 at p. 7, ¶ 4. The court notes that plaintiff's memorandum in opposition and statement of disputed material facts are not filed into the record as separate documents. Accordingly, all page citations to R. 54 refer to the electronic page number assigned to the memorandum in opposition. All citations containing paragraph designations refer to the plaintiff's statement of material facts.

Additionally, plaintiff was granted leave to file a supplemental memorandum in opposition, which is part of the record of this case at R. 63. The filing appears to be a near replica of plaintiff's original opposition, but with additional citations, which were largely omitted from plaintiff's original opposition. Plaintiff did not, however, file the exhibits and/or attachments thereto. The court assumes that counsel for plaintiff's intent was to have the court refer to the exhibits attached to the original opposition and that his intention in filing a supplemental opposition was only to correct the omitted citations. Again, this has created some confusion and much inconvenience for the court. Counsel for plaintiff is instructed to familiarize himself with the filing procedures in CM/ECF in order to prevent such errors in the future.

The court will cite only R. 54 and its attachments as plaintiff's memorandum in opposition, although the reader will have to supplement any review of same by reference to R. 63 for appropriate internal citations.

1

to perform tasks for David Guitreau ("Guitreau"), Dwight Braud ("Braud") and Dan Eppinett ("Eppinett").[3]

Plaintiff began treatment under Dr. David Todd ("Dr. Todd") for depression, anxiety, ADD and sleep disorder in 2005. [4] In September of 2006, plaintiff's sister died of cancer.[5]

Testimony from Guitreau and Braud states that plaintiff's job performance was lacking once she returned from bereavement leave.[6] Guitreau states that plaintiff's attendance at work was poor and that she seemed unproductive, engaging in only those activities that she wanted to, rather than completing all tasks assigned to her.[7] Similarly, Braud states that plaintiff was not performing at work and that it was clear that she lacked focus.[8]

Guitreau states that concern among managers regarding plaintiff's well-being and job performance continued to grow until he felt that it had to be addressed.[9] For that reason, Guitreau says he asked Braud to meet with plaintiff to discuss these issues.[10] On or about December 21, 2006, Braud met with plaintiff. Plaintiff alleges that, as a result of this meeting, she was asked to draft and submit what she refers to as a "Normal Action Plan" ("Action Plan").[11] Braud claims that he never received the Action Plan and that he asked her to submit any such plan to Breaux.[12] Plaintiff's father died in January of 2007.[13] Braud asserts that plaintiff's performance continued to "lag" during the first half of 2007. Similarly, Guitreau

---

[3] Id. at p. 31.
[4] Id. at p. 33.
[5] Id. at p. 34.
[6] Declarations of Billy Guitreau and Dwight Braud [R. 22-6, -7].
[7] R. 22-6 at ¶ 6.
[8] R. 22-7 at ¶ 6.
[9] R. 22-6 at ¶ 6.
[10] Id.
[11] R. 54 at p. 46; copy of Action Plan [R. 54-1 at pp. 93-97].
[12] R. 22-7 at ¶ 8.
[13] R. 54 at p. 47.

2

states that he received feedback from his managers that plaintiff's performance had not improved following her December 2006 meeting with Braud.[14]

Plaintiff alleges that she was treated harshly by a fellow Executive Secretary, Deborah Files ("Files") and that disputes between them added to the psychological trauma she was experiencing.[15] Plaintiff also alleges that her mental health and job performance were the subject of office gossip, which resulted in a hostile work environment.[16]

Plaintiff was transferred from the Maintenance and Turnaround Division to the Workforce Development and Training Division in August of 2007. Guitreau states that this transfer occurred because he wanted to find alternative work for plaintiff, rather than firing her for her poor performance.[17] Citing her skill at organizing events and interacting with people, Guitreau states that he asked Braud to confer with Mike Phelps ("Phelps"), Turner's Vice-President of Human Resources, in order to see what jobs might be available.[18]

In her new position, plaintiff reported to Win Songy ("Songy"), Ray Neck ("Neck") and Quinn Guidry ("Guidry").[19] Plaintiff alleges that Turner failed to provide her with a list of responsibilities or a job description for this new position.[20] Plaintiff asserts that she finally received a job description approximately three (3) months after her transfer.[21] Plaintiff alleges that Songy created a hostile work environment by screaming at her and causing her to cry.[22]

---

[14] R. 22-6 at ¶ 10.
[15] R. 54 at ¶¶ 9, 12.
[16] Id.; R. 54 at pp. 50-51.
[17] R. 22-6 at ¶ 12.
[18] Id.
[19] R. 54 at ¶ 49.
[20] R. 54 at p. 36.
[21] Id.
[22] R. 54 at ¶ 49.

Emails submitted as evidence demonstrate that plaintiff contacted Phelps and asked that she be allowed to report directly to him, rather than Songy, because of the hostility between them.[23]

Testimony from Phelps and Songy states that plaintiff desired a change in responsibilities and sought to be given the title of "Employee Performance Specialist/Workforce Recruiter."[24] Phelps and Songy state that plaintiff was hired into the Workforce Development and Training Division as an administrative assistant, but that she envisioned her role as that of a manager and, for that reason, failed to conform to the standards as expected.[25]

Plaintiff met with Susan Brooks ("Brooks"), Turner's Employment Relations and Diversity Manager on October 11, 2007. Turner alleges that this meeting was prompted by plaintiff's memorandum of October 5, 2007 to both Phelps and Thomas Turner, CEO of Turner Industries Group, LLC.[26] Turner further alleges that, because of the content of the memorandum and negative feedback from various managers regarding plaintiff's performance, Brooks offered plaintiff the opportunity to resign with a severance package.[27] Plaintiff was given a day off to consider the decision, but advised that, if she were terminated, she would not be given severance.[28]

Turner alleges that plaintiff cancelled her follow-up meeting with Brooks and, shortly thereafter, Turner became aware that plaintiff had manufactured her own business cards displaying the Turner logo and advertising her title as "Employee Relations Specialist/Workforce Recruiter."[29] Plaintiff was advised that, due to her cancellation of the follow-up meeting, she

---

[23] Email from plaintiff asking that she allowed to report directly to Phelps [R. 22-5 at p. 13].
[24] R. 22-5 at ¶ 9; R. 22-8 at ¶ 4.
[25] R. 22-5 at ¶ 9; R. 22-8 at ¶¶ 6, 9, 14.
[26] R. 22-5 at ¶ 64; Copy of plaintiff's memorandum to Phelps and Thomas Turner [R. 22-5 at pp. 13-14].
[27] R. 22-2 at ¶ 67.
[28] Id.
[29] R. 22-2 at ¶¶ 73-77.

4

was being placed on unpaid suspension until further notice.[30] Testimony by Phelps indicates that he made the decision to terminate plaintiff's employment on October 17, 2007 and that he informed her of this decision by letter of the same date.[31]

Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR") by written letter in October of 2007.[32] Plaintiff's complaint alleges that she was informed that she was being terminated during her October 12, 2007 meeting with Brooks.[33] Plaintiff's complaint further alleges that she met with Brooks again on October 25, 2007 at a Starbucks Coffee in Baton Rouge, Louisiana and, at this meeting, Brooks informed her that she was now being terminated for cause because of plaintiff's manufacturing and distribution of unapproved business cards.[34] Plaintiff's complaint also alleges that, "during our second meeting[,]" plaintiff stated to Brooks that Turner was in violation of the ADA.[35] Plaintiff's complaint asserts that Brooks offered to change her status from "[f]ired" to "[f]ormal [r]esignation" and would pay her $12,000 if she agreed to Brooks' terms, which included a waiver of all claims with the EEOC.[36] Plaintiff's complaint states:

> I asked if this was bribery, of course she stated it was not. I told her with tears streaming down my face that our conversation was over as I had filed a claim with the EEOC and I would proceed, at which point she stated that she had always beaten the EEOC in the past.[37]

---

[30] R. 22-5 at ¶ 21.
[31] Id. at ¶ 22- 23.
[32] R. 54-1 at pp. 18-20. The court notes that plaintiff's memorandum in opposition mistakenly cites the date for this complaint as October 30, 2010. We further note that plaintiff does not specifically argue the dates on which she instituted her EEOC and LCHR claims, making any determination as to whether or not the 180-day or 300-day statutes of limitation apply. See 42 U.S.C. § 2000e-5(e). For purposes of this summary judgment motion, we assume that the 300-day provision applies for plaintiff's utmost benefit.
[33] Id.
[34] Id.
[35] Id. at p. 19.
[36] Id. at p. 20.
[37] Id. at p. 20.

5

After investigation of plaintiff's charge, plaintiff received a Notice of Right to Sue on or about June 13, 2009.[38]  Similarly, plaintiff received a Determination from the LCHR, in which the LCHR found that the evidence before it established a violation of plaintiff's rights under the Louisiana Employment Discrimination Law ("LEDL") and Title VII of the Civil Rights Act of 1964.[39]  Plaintiff filed the instant suit on October 12, 2009,[40] asserting claims for violation of the Americans with Disabilities Act ("ADA"), the LEDL and La. R.S. 23:967, et seq. ("Louisiana whistleblower statute").  Specifically, plaintiff's memorandum in opposition states that she advances claims for discrimination, harassment and retaliation under the ADA and LEDL and violation of Louisiana's whistleblower statute.[41]

Turner's motion for summary judgment asserts that plaintiff's various claims under these federal and state laws should be dismissed with prejudice, each for various reasons.  In response to Turner's motion, plaintiff filed a memorandum in opposition and attached various exhibits.[42]  Included among these proofs is a declaration executed by plaintiff.[43]  We address all of these issues below.

## II.     APPLICABLE STANDARD

As amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[44]

---

[38] R. 54-1 at p. 27.
[39] R. 54-1 at pp. 30-32.
[40] The court notes that neither party raises the issue of whether or not plaintiff's suit was instituted with the 90-day period required by 42 U.S.C. § 2000e-5(f)(1).  Accordingly, we assume for plaintiff's benefit that plaintiff's suit was instituted timely under Title VII, applicable to the ADA.
[41] R. 63 at p. 32.
[42] R. 54.
[43] R. 54-1 at pp. 33-39.
[44] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard.  See advisory committee comments to Rule 56 (2010 amendments).

6

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[45] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[46]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[47] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[48] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt" as to the material facts.[49] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[50]

## III.    ANALYSIS

Turner's motion first argues that plaintiff's ADA and LEDL disability claims should be dismissed because plaintiff is unable to demonstrate a prima facie case of disability

---

[45] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[46] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[47] Fed. R. Civ. P. 56(c)(2).
[48] Fed. R. Civ. P. 56(c)(1).
[49] Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 477 U.S. 242 (1986).
[50] Id.

7

discrimination. The ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.[51] The ADA prohibits an employer from discriminating against a "qualified individual with a disability" on the basis of that disability.[52] In order to establish a prima facie case of discrimination under the ADA, plaintiff must show that

(1) she has a disability;
(2) she was qualified for the job; and
(3) she was subjected to an adverse employment decision because of her disability;
(4) she was replaced by or treated less favorably than non-disabled employees.[53]

A "qualified individual with a disability" is defined by the ADA as a person who has a disability, but is able "with or without reasonable accommodation [to] perform the essential functions of the employment position that such individual holds or desires."[54] Section 12102 of the ADA further defines "disability" as

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment...[55]

The ADA further defines "major life activities" as including, but not limited to

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.[56]

---

[51] Pierce v. State, Office of Legislative Auditor, 984 SO.2d 61 (La. App. 1 Cir. 2008); O'Boyle v. La. Tech Univ., 741 So.2d 1289, 1290 (La. App. 2 Cir. 1999). Accordingly, the court may reference only the ADA, but our analysis applies equally to plaintiff's claims under the LEDL.
[52] 42 U.S.C. § 12112(a).
[53] Zenor v. El Paso Healthcare System, Ltd., 176 F.3d 847 (5th Cir. 1999) citing Robertson v. Neuromedical Center, 161 F.3d 292 (5th Cir. 1998); Sherrod v. American Airlines, Inc., 132 F.3d 1112 (5th Cir. 1998); Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758 (5th Cir. 1996); Turco v. Hoechst Celanese Corp., 101 F.3d 1090 (5th Cir. 1996).
[54] 42 U.S.C. § 12111(8).
[55] 42 U.S.C. § 12102(1)(A)-(C).
[56] 42 U.S.C. § 12102(2)(A).

8

Paragraph 29 of plaintiff's complaint alleges that she is disabled as that term is defined under both the ADA and Louisiana law.[57] Paragraph 30 alleges, alternatively, that plaintiff was regarded by Turner as being disabled. Paragraph 30 also vaguely insinuates that, though plaintiff was diagnosed with several psychological disorders, she was capable of performing her duties and not disabled to the extent assumed by Turner. In other words, she was regarded as being more disabled than she actually was.

Turner's motion points out that plaintiff stated during her deposition of March 19, 2010 that she was "not disabled under the ADA."[58] For that reason, Turner's motion asks that any purported claim by defendant that she was disabled under the ADA, rather than regarded as disabled, should be dismissed.[59] Plaintiff's memorandum in opposition to the motion emphatically argues that plaintiff does believe she is actually disabled under the ADA.[60] Plaintiff's opposition also seems to suggest that she was also regarded as being disabled.[61]

While the court agrees that plaintiff's "shotgun approach" to her disability claim is disorganized, perhaps to the degree that plaintiff herself does not comprehend its structure, we find that plaintiff's complaint pled both actual and perceived disability, providing Turner with ample notice of these claims.[62] Although not directly argued by Turner, we also find that both theories were fairly included within the scope of plaintiff's EEOC and LCHR charges.[63] .

In support of her disability claim, plaintiff submits medical records from Dr. Todd describing her condition during various office visits and listing various prescribed medications.[64]

---

[57] R. 1 at pp. 8-9.
[58] R. 22-3 at p. 19.
[59] Id.
[60] R. 54 at pp. 36-38; 49-50.
[61] Id.
[62] F.R.C.P. 8(a).
[63] Fine v. GAF Chemical Corp., 995 F.2d 576, 577-78 (5th Cir. 1993) quoting Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983).
[64] R. 54-1 at pp. 40-62; R. 63-1.

9

These documents demonstrate that plaintiff was diagnosed with and treated for one or more mental impairments. Plaintiff fails, however, to address the portion of the ADA disability definition that requires that the impairment(s) "substantially limit a major life activity." Both elements of the definition must be met in order to establish the existence of a disability.[65] Whether or not an impairment is substantially limiting and, thus, a qualifying disability thereunder, is determined in light of

(1)    the nature and severity of the impairment;
(2)    its duration or expected duration; and
(3)    its permanent or expected permanent or long-term impact.[66]

Plaintiff denies that any limitations placed on her work or on any other aspect of her life by Dr. Todd. Similarly, plaintiff offers no argument that she was prevented from working by any mental impairment. Plaintiff's testimony regarding whether or not she was disabled during her employment with Turner is vague and seems to argue both for and against such a finding. In one instance, plaintiff states that she "probably did" feel that her performance at Turner was lacking since she wrote that it was lacking in an email.[67] In subsequent testimony, plaintiff denied that her performance was lacking, though she wrote that "there's no doubt my performance has lacked," attributing that writing to the influence of Braud during their lengthy meeting in December of 2006.[68] When presented with yet another email dated June 27, 2007, in which plaintiff wrote, "I feel my work is lacking," plaintiff admitted that she felt her work was lacking, at that time, "in some capacity."[69]

---

[65] 29 C.F.R. § 1630; Dutcher v. Ingalls Shipbuilding, 53 F.3d 723 (5th Cir. 1995).
[66] 42 U.S.C. § 12
[67] R. 22-4 at 106:23-107:6.
[68] Id. at 122:21-124:1.
[69] Id. at 124:4-17.

An impairment corrected by medication or other mitigating measures does not constitute a substantially limiting impairment under the ADA.[70] When asked whether or not her diagnosed ADD presented a challenge to plaintiff in the performance of her duties at Turner, she replied "no, [S]ir, because I was on medication to control it."[71]

Similarly, plaintiff offers no argument as to what reasonable accommodations, if any, she required, that she requested such accommodations or that her employer's refusal to accommodate her specific disability resulted in her inability to perform her duties as an Executive Secretary.[72] To the contrary, plaintiff admits that she was provided with a substantial amount of paid leave for which she was not charged and was counseled as to her employer's expectations.

Under these facts, plaintiff has failed to establish the threshold disability element of her claim for actual disability discrimination under the ADA. Even if the court were to assume that plaintiff was able to meet her burden of proof as to the element of disability, this claim would still fail. While plaintiff is able to demonstrate that she was qualified for the position of Executive Secretary, she is unable to demonstrate that the adverse employment action she suffered, termination,[73] was caused by her disability or that she was replaced by or treated less favorably than other non-disabled people.[74]

---

[70] E.E.O.C. v. R.J. Gallagher Co., 181 F.3d 645 (5th Cir. 1999).

[71] R. 22-4 at 69:1-11.

[72] E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 471 (5th Cir. 2009) citing Hedrick v. Western Reserve Care System, 355 F.3d 444, 457 (6th Cir. 2004) (the ADA does not grant a right to plaintiff's preferred accommodation, but, instead, to a reasonable accommodation).

[73] An adverse employment action consists of "ultimate employment decisions such as hiring, firing, granting leave, discharging, promoting, and compensating." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); Pegram v. Honeywell, Inc., 361 F.3d 272 (5th Cir. 2004).

[74] Plaintiff offers no argument or evidence that she was treated less favorably than other non-disabled persons at Turner or that she was replaced by a non-disabled person.

Taking the hypothetical a step further, if the court were to assume that plaintiff successfully carried her burden of proof as to each of the four (4) elements of her prima facie case, the court finds that Turner has successfully articulated at least two (2) legitimate, non-discriminatory reasons for plaintiff's termination under the applicable McDonnell Douglas burden shifting framework.[75] Given Turner's proffered reasons of poor job performance and unauthorized use of a business card bearing the Turner logo, the burden would again be with the plaintiff to show that these proffered reasons are merely pretext for impermissible discrimination.[76]

Plaintiff only addresses the issue of pretext by alleging that "various other employees of Turner had similar cards made with the company's logo."[77] Plaintiff also alleges that she obtained permission prior to distributing this card from Guidry.[78] Guidry denies that he approved the card.[79] Plaintiff's blanket assertion that other employees possessed cards displaying the Turner logo does not amount to a showing that these other employees manufactured these cards for themselves without prior permission. Plaintiff offers no evidence that any other employee undertook this behavior or did so without punishment. Moreover, although plaintiff's testimony contradicts that of Guidry in asserting that she had prior permission, we find this issue to be moot since plaintiff clearly admits that her conduct in manufacturing and distributing these cards was "wrong."[80]

While plaintiff's emails and, to a large degree, her own testimony express that she felt her work for Turner was lacking, plaintiff's response to Turner's statement of material facts asserts

---

[75] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Gowesky v. Singing River Hosp. Systems, 321 F.3d 503, 511 (5th Cir. 2003) citing McInnis v. Alamo Community College Dist., 207 F.3d 276, 279-80 (5th Cir. 2000).

[76] Id.
[77] R. 54 at p. 37.
[78] R. 54-3 at pp. 62-63.
[79] R. 22-9 at ¶7.
[80] See n. 73, above.

that she did not feel her work was lacking and, to the extent that it may have been lacking, this was due to outside assignments and errands she was tasked with by supervisors.[81] While plaintiff's assertion that she was a quality employee making valuable contributions to Turner conflicts with her own writings and the testimony of all of her supervisors and coworkers,[82] we find this issue insufficient to establish pretext. As stated above, it is clear that plaintiff's conduct in manufacturing and distributing the business cards bearing a title she did not possess was contrary to the expectations of her employer and that plaintiff admits as much. For that reason, the court finds that plaintiff has failed to rebut at least one of the legitimate, non-discriminatory reasons offered by Turner for plaintiff's termination.

Thus, making every inference possible in favor of plaintiff, her claim for discrimination based on an actual disability fails as a matter of law. We turn now to plaintiff's claim for discrimination based on perceived disability, often referred to as a "regarded as" claim.

As recited above, plaintiff must demonstrate the threshold element of actual or perceived disability in order to state a claim for disability discrimination under the ADA. Plaintiff, in alleging that she was regarded as disabled, may offer proof that she was not disabled at all or not disabled in the manner or to the extent perceived by her employer.[83] Additionally, plaintiff must demonstrate that the disability, as perceived by the employer, constituted a substantially limiting impairment and that the perception was maintained by the decision maker responsible for the adverse employment action.[84]

As we noted earlier, plaintiff pleads both actual and perceived disability in the alternative. Given that this court has already found that plaintiff fails to demonstrate that she

---

[81] R. 54 at ¶¶ 28-30.
[82] Declaration of Guitreau [R. 22-6] at ¶¶ 6, 10, 11; Declaration of Braud [R. 22-7] at ¶¶ 4, 6, 10; Declaration of Guidry [R. 22-8] at ¶¶ 3, 6; Declaration of Neck [R. 22-9] at ¶¶ 3, 4.
[83] McInnis, 207 F.3d at 281 citing Sherrod, 132 F.3d at 1121.
[84] Deas v. River West, L.P., 152 F.3d 471 (5th Cir. 1998).

was disabled within the meaning of the ADA, the scope of available arguments in support of her "regarded as" claim is narrowed. Plaintiff's opposition argues that she is, in fact, disabled. Thus, the court will not permit plaintiff to argue that she is not disabled, but regarded as disabled. Additionally, plaintiff has not proven actual disability and, thus, no basis exists for a fact finder to conclude that, while disabled, she was not actually as disabled as her employer perceived her to be.

Assuming, hypothetically, that plaintiff was able to carry her burden of proof with respect to the remaining elements of her prima facie case, we find that her "regarded as" claim would still fail based on plaintiff's failure to present any evidence that Guidry, who made the decision to terminate plaintiff, regarded her as being more disabled than she actually was. Plaintiff offers no argument or evidence on this issue.

Aside from her blanket assertions that everyone knew of her mental impairments, plaintiff offers a memorandum to Billy Guitreau, Dwight Braud and Ronnie Breaux, authored by David Guitreau, son of Billy Guitreau and a fellow Turner employee, wherein David states

> I know we all share in the concern for Angie and her well-being. I just want to raise a caution flag. Even though we all like her and consider her family she is still an employee. We need to be cautious in how we deal with her and what's said to her. We also need to limit or try and control the amount of office gossip.
>
> I've attached a section of a personnel law updated book dealing with possible legal issues that can arise when an employee is regarded as having an impairment.[85]

While this memorandum certainly demonstrates that Guitreau, Braud and Breaux were aware of the potential issues that might arise, it does not demonstrate that these supervisors considered plaintiff as disabled or as more disabled than she actually was. Moreover, an employer's knowledge of an impairment does not automatically impute knowledge of a disability

---

[85] R. 54-1 at pp. 64-65.

under the ADA. Whether or not an impairment, such as depression or anxiety, constitutes a disability is an individualized inquiry since the employee's ability to manage and/or mitigate any ill effects of such a diagnosis will vary from person to person.[86]

Additionally, plaintiff offers no evidence of what impairment Turner perceived her to have or that such impairment would be, if true, substantially limiting as to one or more life activities. Thus, even if plaintiff successfully demonstrated all other elements of her prima facie case, she will still have failed to carry her burden of proof with respect to the threshold element of disability as to her "regarded as" claim.

For these reasons, the court finds that plaintiff's ADA and LEDL claims for actual and "regarded as" disability discrimination should be dismissed with prejudice.

Turner's motion next asserts that plaintiff's hostile work environment claims should be dismissed. Plaintiff seems to allege two sets of hostile work environment claims: federal and state claims based on disability harassment and federal and state claims based on sexual harassment.[87] We first address plaintiff's claims of sexual harassment. Plaintiff alleges that Breaux often propositioned her for sex and subjected her to various sexually-motivated comments and that he became hostile toward her when she refused his advances.[88]

Turner argues that this court lacks jurisdiction over any claims by plaintiff of sexual harassment because plaintiff failed to include any such allegations in her EEOC charge and, therefore, has not exhausted her administrative remedies as to that claim.

In order to successfully assert a Title VII claim of sexual harassment, a plaintiff must file a charge of discrimination within 180 days of the conduct at issue unless plaintiff has first

---

[86] Dupre v. Charter Behavioral Health Systems of Lafayette, Inc., 242 F.3d 610, 614 (5th Cir. 2001) citing Dutcher, 53 F.3d at 726.
[87] R. 1 at ¶¶ 14, 19, 23, 26.
[88] R. 54 at p. 40.

instituted a claim with a state agency for concerning the same allegations.[89]  The filing of an administrative complaint and the exhaustion of administrative remedies are jurisdictional prerequisites to a Title VII action.[90]  The court has carefully reviewed plaintiff's EEOC charge and finds absolutely no reference to any sexual harassment therein.  While plaintiff's complaint does fairly include allegations of sexual harassment, without plaintiff's prior satisfaction of the jurisdictional prerequisites, this court lacks jurisdiction over any such claim.  Moreover, as argued by Turner, Louisiana law requires that an employer be notified in writing of alleged sexual harassment.[91]  Plaintiff does not demonstrate that any prior statutory notice was provided to Turner.

Given that the events in question, consisting of conversations and emails exchanged between plaintiff and her supervisor Breaux, occurred prior to her termination in 2007, any claim that may have accrued is now time-barred under Title VII as discussed in the court's memorandum ruling as to Turner's motion to strike, also issued this day.  The court will, therefore, dismiss plaintiff's sexual harassment hostile work environment claims with prejudice.

We next address plaintiff's federal and state disability hostile work environment claims.  Turner's motion asserts that plaintiff is unable to demonstrate a prima facie case of disability harassment.

To succeed on a claim of disability-based harassment, plaintiff must show

(1)     that she belongs to a protected group;
(2)     that she was subjected to unwelcome harassment;

---

[89] 42 U.S.C. § 2000e-5(d).  The court assumes that, to the extent plaintiff alleges sexual harassment, such claim would be brought under Title VII, rather than the ADA or LEDL, though plaintiff fails to address the applicable law as to any such claim.

[90] Barnes v. Levitt, 118 F.3d 404 (5th Cir. 1997) citing Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995), Johnson v. Bergland, 614 F.2d 415, 417 (5th Cir. 1980).

[91] La. R.S. 23:303(c) states that "[a] plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action."

(3)     that the harassment complained of was based on her disability

(4)     that the harassment complained of affected a term, condition, or privilege of employment; and

(5)     that the employer knew or should have known of the harassment and failed to take prompt, remedial action.[92]

Turner argues that, since plaintiff is unable to demonstrate that she is "disabled" within the meaning of the ADA and LEDL, she is likewise unable to demonstrate membership in a protected group as required here. The court agrees, as expressed above. While we note that while plaintiff has provided ample evidence that her mental impairments were the topic of office gossip which may or may not be sufficiently severe or pervasive to satisfy the fourth element of the analysis,[93] plaintiff's failure to establish, or even to argue, that she was substantially limited in one or more life activities by such impairments is fatal to her hostile work environment claim in this case. Accordingly, the court finds that plaintiff's remaining hostile work environment claims should be dismissed with prejudice.

Turner's motion next asserts that plaintiff's federal and state claims for retaliatory discharge should be dismissed because plaintiff failed to include her allegations of retaliation in her EEOC charge and plaintiff is unable to establish the necessary elements of her prima facie case of retaliatory discharge. Turner points out that plaintiff alleges that she told "Human Resource /sic/" she filed an EEOC complaint prior to her suspension and termination. Turner avers that plaintiff is only excused from including her allegations of retaliatory discharge in her EEOC charge if the allegation arises after the filing of the charge.

It is well established that the timely filing of a charge of discrimination with the EEOC and the receipt of a right-to-sue letter are conditions precedent to the filing of an ADA action in

---

[92] Flowers v. Southern Regional Physician Services, Inc., 247 F.3d 229, 235-36 (5th Cir. 2001) citing McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998).

[93] Soledad v. U.S. Dept. of Treasury, 304 F.3d 500, 506 (5th Cir. 2002) citing Flowers, 247 F.3d at 236.

federal district court.[94]  Once a plaintiff is informed of the right to sue under the ADA, the claims asserted in the complaint may not exceed the scope of the EEOC charge.[95]  The scope of an EEOC charge includes all claims expressly stated and all claims that may reasonably be expected to grow out of the investigation of claims stated.[96]

The court has carefully reviewed plaintiff's initial complaint letter to the EEOC, her application with the Louisiana Commission on Human Rights and the resulting EEOC charge.[97] The only portion of plaintiff's October 30, 2007 letter to the EEOC that may be construed as alleging retaliatory discharge is the following:

> [s]he stated that they were now terminating me "with cause" because I made my own business cards for my new position, stating that I used the company logo without permission and the title I gave myself had not officially been assigned to me…At any rate, Mrs. Brooks stated Turner would change my "Fired" status to "Formal Resignation", /sic/ offering me $12,000 (I unsure /sic/ of exact amount as she would not allow me a copy), if I agreed to her terms.  As she flipped into the proposal she stated to me that because I had mentioned Turner had violated the ADA Law /sic/, she had added that clause to the standard form, meaning I had to withdraw my claim with the EEOC.  I ask /sic/ if this were /sic/ bribery, of course she stated it was not.  I told her with tears streaming down my face that our conversation was over as I had filed a claim with the EEOC and I would proceed, at which point she stated she had always beaten the EEOC in the past.[98]

The charge of discrimination drafted by the EEOC from plaintiff's letter contains absolutely no reference to retaliatory discharge.  Plaintiff signed the charge on February 8, 2008.[99]  Plaintiff's application with the LCHR reads, in part,

> [d]escribe any other actions you believe were discriminatory.

---

[94] Dao v. Auchan Hypermarket, 96 F.3d 787 (5th Cir. 1996) (internal citations omitted) (noting that all courts considering the issue concluded that the procedures of Title VII apply to ADA claims).
[95] Fine v. GAF Chemical Corp., 995 F.2d 576 (5th Cir. 1993); Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).
[96] Id.
[97] R. 54-1 at pp. 18-26.
[98] R. 54-1 at pp. 19-20.
[99] Id. at p. 21.

18

> ADA violation, defamation, my complaints of hostile work
> environment, whistleblower about "new hire" for mailroom to HR
> Rep & EEOC, Retaliation, wrongful termination[.][100]

The LCHR findings state that plaintiff was terminated for cause based on her unauthorized production of a business card bearing the Turner logo and misrepresenting her title.[101]

The central purpose of the EEOC charge is to inform the employer of the nature of the charges against him.[102] The Fifth Circuit Court of Appeals instructs that the factual statement contained in the charge is more determinative than the labeled boxes.[103] If the facts alleged support a particular claim, a plaintiff's failure to check the appropriate box will not bar the claim in subsequent proceedings.[104]

As argued by Turner, plaintiff's EEOC charge displays "DISABILITY" as the "CIRCUMSTANCE OF ALLEGED DISCRIMINATION" and lists "Discharge" and "Harassment" as "Issues."[105] Turning to the factual statement of the charge, the court finds no supporting factual allegations which would inform Turner that it faces charges of retaliatory discharge. Plaintiff offers no argument that such claim would be or actually was uncovered during the course of the EEOC investigation.

Additionally, it appears that plaintiff entirely misunderstands the burden of proof as to this claim, offering no argument or evidence as to when she first contacted the EEOC or the LCHR. As cited above, the letter drafted by plaintiff to the EEOC is dated October 30, 2007.

---

[100] Id. at p. 24.
[101] Id. at p. 31.
[102] EEOC v. Shell Oil Co., 466 U.S. 54, 77 (1984).
[103] Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).
[104] Id.
[105] R. 22-11.

19

Although plaintiff vaguely asserts that she had already instituted an EEOC complaint against Turner before she was fired, plaintiff offers no documentation or other proof thereof.

For these reasons, the court finds that plaintiff's purported federal retaliatory discharge claim is not included within the scope of her EEOC charge and, accordingly, is not properly before this court. Plaintiff's failure to exhaust her administrative remedies as to this specific claim deprives this court of jurisdiction to consider the claim and, as such, it will be dismissed.

Turning to plaintiff's Louisiana law retaliatory discharge claim, the facts are different, but the result is the same. Plaintiff clearly listed retaliation as a claim on her LCHR charge, but fails to show that she provided prior written notice to Turner of her intent to file suit pursuant to La. R.S. 23:303(c).[106] For this reason, plaintiff's state law retaliatory discharge claim must also be dismissed.

Turner's motion asserts that plaintiff's claim under Louisiana's whistleblower claim should be dismissed. La. R.S. 23:967 provides, in part, that

> [a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or procedure that is in violation of law.[107]

---

[106] La. R.S. 23:303(c) states that "[a] plaintiff who believes that he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

[107] La. R.S. 23:967(A)(1)-(3).

20

Turner argues that plaintiff does not show that she reported any actual violation of Louisiana law or otherwise disclosed such violation. Plaintiff asserts that she engaged in a protected activity when "she informed Susan Brooks that she was filing an EEOC complaint based on ADA /sic/ claim of disability, retaliation and harassment…"[108]

A plaintiff asserting rights under the Louisiana whistleblower statute bears the same burden of proof as one asserting rights under Title VII.[109] Accordingly, the court applies the familiar McDonnell Douglas burden shifting framework to its analysis of such claims.[110] Under McDonnell Douglas, plaintiff must demonstrate (1) that she engaged in a protected activity under the statute; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse employment action.[111] If the plaintiff successfully demonstrates these three elements, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer offers such reason, the burden again shifts to the plaintiff to demonstrate that the employer's proffered reason is merely pretext.

Plaintiff alleges, at different points in her testimony and memorandum in opposition, that she either had already filed an EEOC complaint when she was fired or that she intended to file such complaint. Thus, plaintiff asserts that she was engaged in a protected activity in reporting or disclosing that she intended to report Turner's violation of the ADA. Though plaintiff neglects to argue this point, the court will assume that plaintiff intended to argue that she disclosed or threatened to disclose Turner's alleged violation of the LEDL, since the Louisiana whistleblower statute applies to violations of state law, rather than federal law.

---

[108] R. 54 at p. 42.
[109] Strong v. University Healthcare System, LLC, 482 F.3d 802, n. 1 (5th Cir. 2007) (standards governing claims under La. R.S. 23:967 are "materially indistinguishable" from those governing Title VII claims).
[110] Imbornone v. Treasure Chest Casino, 2006 WL 1235979 (E.D. La. 2006).
[111] Id. at *3 citing Smith v. AT&T Solutions, Inc., 90 Fed.Appx. 718 (5th Cir. 1994).

Case 3:09-cv-00872-JTT -JDK   Document 68   10/19/11   Page 21 of 22

Plaintiff must show that Turner actually committed a violation of state law in order to fulfill her burden as to the first element of her claim.[112]  As discussed above, plaintiff fails to demonstrate viable claims under the LEDL and, for that reason, has not established an actual violation of state law.  While we agree that plaintiff has certainly demonstrated that she was subjected to an adverse employment action in being terminated, we find that plaintiff fails to demonstrate a causal connection between her actual or threatened disclosure of Turner's alleged violation of state law and her termination.  At best, plaintiff's argument rests solely on temporal proximity, which is insufficient to establish causation on its own.[113]

Moreover, this court has already found that Turner articulated at least two (2) legitimate, non-discriminatory reasons for plaintiff's termination which were not shown to be pretext by plaintiff.  Accordingly, plaintiff's claim under the Louisiana whistleblower statute should be dismissed with prejudice.

## IV.    CONCLUSION

Having carefully considered the law and argument advanced by the parties as to Turner's motion for summary judgment, this court finds that Turner's motion should be GRANTED in full and that all claims by plaintiff in this suit should be dismissed with prejudice.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
October, 19, 2011

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[112] Accardo v. Louisiana Health Services & Indem. Co., 943 So.2d 381 (La. App. 1 Cir. 2006); Hale v. Touro Infirmany, 886 So.2d 1210 (La. App. 4 Cir. 2004).
[113] Roberson v. Alltell Info. Services, 373 F.3d 647 (5th Cir. 2004); Swanson v. Gen. Services Admin., 110 F.3d 1180 (5th Cir. 1997).

22